

# NUMBER 13-20-00360-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ROBERT FUENTES,                                                      Appellant,

v.

THE STATE OF TEXAS,

                                                                     Appellee.

### On appeal from the 94th District Court
### of Nueces County, Texas.

## MEMORANDUM OPINION

**Before Justices Longoria, Hinojosa, and Tijerina**
**Memorandum Opinion by Justice Hinojosa**

The State charged appellant Robert Fuentes with murder, a first-degree felony, and aggravated assault with a deadly weapon, a second-degree felony. *See* TEX. PENAL CODE ANN. §§ 19.02(c), 22.02(a)(2). By one issue, Fuentes contends the trial court abused its discretion when it partially denied his pre-trial writ of habeas corpus and

reduced his pre-trial bail from $750,000 to $500,000, an amount he argues is constitutionally excessive and illegal. We affirm.

## I. BACKGROUND

On March 17, 2020, Fuentes was arrested for shooting his ex-girlfriend, Kristal Pena, and her mother, Ana Pena, at Molly's Irish Sports Pub in Corpus Christi, Texas. Kristal suffered fatal gunshot wounds to her head and upper body and died at the scene. Ana survived her wounds after a four-day hospital stay, where surgeons performed a hysterectomy and also removed her bladder and appendix.

Fuentes was arrested and charged with murder and aggravated assault. *See id.* §§ 19.02(c), 22.02(a)(2). At booking, it was noted that Fuentes had an outstanding nisi warrant for failing to appear at a hearing for a driving while intoxicated (DWI) offense. *See id.* § 49.04. On March 18, 2020, the magistrate set bail for the murder at $500,000 and for the aggravated assault at $250,000, for a total of $750,000.[1] The magistrate also appointed an attorney for Fuentes, who immediately moved for a bail reduction and asked for a hearing on his motion.

## A. The First Bail Reduction Hearing

On April 15, 2020, the trial court held its first hearing on Fuentes's request for bail reduction. The court noted that Fuentes's pretrial risk assessment, performed by the Nueces County probation department, was "low." Fuentes testified that he grew up in Corpus Christi and had strong ties to the community. He stated that he has worked intermittently as a sandblaster/painter for Brock Services at the Lyondell Plant for the past

---

[1] The magistrate also set bond for the pending DWI, trial court cause number 17FC-10922, at $5,000.

2

ten years. He testified that, if released, he would live with his mother and try to continue to work. Fuentes stated that his family probably could not afford a bond of more than $30,000.

Ana also testified. She explained that the night of the shooting, she was having a beer at a pub with her husband and two daughters Valerie and Kristal when Fuentes shot and killed Kristal. She also discussed her own extensive injuries and recovery after the incident. Ana testified that Fuentes "was always stalking [her] daughter," that he lurked around Ana's apartment, and one time flattened the tires on Ana's vehicle. Ana relayed that prior to the shooting incident, Fuentes sent her aggressive text messages, using explicit insults when referring to her husband, calling her family "fake," and warning that "he couldn't wait to see them," which Ana interpreted as a threat. She feared for her life if Fuentes was released on bail and believed he would "come and shoot" her again.

Adrian Silva, Kristal's stepfather and Ana's husband, testified that he was at the pub the night Fuentes killed his stepdaughter and seriously injured his wife. Silva explained that Fuentes and Kristal had a volatile relationship for two-and-a-half years. Silva witnessed Fuentes strike Kristal, Ana, and his granddaughter before at different times. Silva also testified that his neighbors had once called him at work before to report that Fuentes was lurking around the family's apartment.

Detective Eddie Alvarado, a nineteen-year veteran with the City of Corpus Christi Police Department, testified that Fuentes had been properly *Mirandized* at arrest. Although Fuentes did not openly confess to committing offenses against Kristal or Ana, "he acknowledged his involvement in this incident." Alvarado stated that Fuentes told law

3

enforcement where they could recover the weapon used, which was a 40-caliber handgun. Although the police department did not find the weapon the day of the incident, the gun was eventually located when a homeowner discovered it mowing his grass a week later.

The trial court acknowledged the witness testimony given, as well as Fuentes's two previously dismissed family violence assault offenses. It also watched a video of the shooting incident obtained by the police department from the pub's security cameras. The trial court denied the motion for bail reduction at that time.

## B.     The Second Bail Reduction Hearing

On June 4, 2020, a grand jury indicted Fuentes for murder and aggravated assault. Fuentes's family retained new counsel, who immediately filed an application for writ of habeas corpus and motion for reasonable bond.

The trial court held its second bail reduction hearing on July 29, 2020. Pearl Fuentes, Fuentes's sister, testified that she and her family called several bail bond companies and that her family was unable to pay the ten percent of the current bond, which was $75,000. She said that, at most, the family could pay from $3,000 to $5,000. She stated that her brother had lifelong ties to Corpus Christi, that he would live with their mother if released, and that his only prior criminal history consisted of a misdemeanor DWI. She stated that "she had no doubt" that her brother would appear at all court hearings if released on bond.

Fuentes's mother, Graciela Lopez Trevino, testified that she would notify law enforcement if her son absconded while out on bail, and that she had "no doubt" that he

4

would appear at court when scheduled if released on bail. On cross-examination, she stated she had no knowledge of Fuentes ever threatening Kristal or her family prior to Kristal's death. She also stated that she was not aware that her son and Kristal's previous relationship was rocky.

Fuentes testified again. He informed the court that he had been in jail for more than one hundred days, most of it in solitary confinement due to COVID restrictions. He promised that if released, he would live with his mother, try to work, and would comply with all reasonable terms and conditions of bond. He admitted that he and Kristal had problems in their relationship and that her family "would always just try to get involved in [their] relationship." He denied threatening Kristal's family and claimed he had not spoken to them in a year and a half. He also denied texting Ana that her family was "fake" or that he "hoped to see them soon."

The trial court took judicial notice of all evidence submitted at the first bond reduction hearing. The court acknowledged Fuentes's roots in the community and his minor criminal history. The court then iterated that there "appears to be some fairly strong evidence against [Fuentes]" and that this "was close to a capital murder case." The court then reduced bond from $750,000 to $500,000.

Fuentes appeals as he contends the reduced bail amount is still constitutionally excessive and illegal.[2]

---

[2] Because this is an appeal from the denial of an application for habeas corpus relief and not an appeal from an order setting bail or from the denial of a pretrial motion for bail reduction, we have jurisdiction. *See Ragston v. State*, 424 S.W.3d 49, 50–52 (Tex. Crim. App. 2014); *see also Ex parte Taylor*, No. 02-20-00010-CR, 2020 WL 1963788, at *1 n.1 (Tex. App.—Fort Worth Apr. 23, 2020, no pet.) (mem. op.).

## II. STANDARD OF REVIEW & APPLICABLE LAW

A trial court's pretrial bail determination is reviewed under an abuse of discretion standard. *Ex parte Cardenas*, 557 S.W.3d 722, 729 (Tex. App.—Corpus Christi–Edinburg 2018, no pet.) (citing *Ex parte Rubac*, 611 S.W.2d 848, 849–50 (Tex. Crim. App. 1981)). "A trial court only abuses its discretion when it acts in an arbitrary and unreasonable manner without reference to any guiding rules or principles . . . ." *Id*. at 730. A trial court's ruling will not be disturbed as long as it lies within the zone of reasonable disagreement. *Clemons v. State*, 220 S.W.3d 176, 178 (Tex. App.—Eastland 2007, no pet.) (per curiam).

"The chief purpose of bail is to secure the presence of the defendant in court for trial." *Ex parte Cardenas*, 557 S.W.3d at 730 (citing *Ex parte Dupuy*, 498 S.W.3d 220, 230 (Tex. App.—Houston [14th Dist.] 2016, no pet.)). Both the United States and Texas Constitutions protect the right to be free from excessive bail. *See* U.S. CONST. amend. VIII; TEX. CONST. art. 1, § 11.

Article 17.15 of the Texas Code of Criminal Procedure sets forth five statutory factors for a trial court to consider when setting bail. *See* TEX. CODE CRIM. PROC. ANN. art. 17.15. The trial court must consider the following: (1) the bail must be sufficiently high to ensure compliance; (2) the bail must not be used as an instrument of oppression; (3) the nature of the offense and the circumstances under which it was committed; (4) the accused's ability to make bail; and (5) the future safety of the victim and the community. *Ex parte Cardenas*, 557 S.W.3d at 730 (citing TEX. CODE CRIM. PROC. ANN. art. 17.15).

In addition to these statutory factors, the trial court also may consider: (1) the accused's work record; (2) his family and community ties; (3) the length of his residency;

6

(4) any prior criminal record; (5) conformity with previous bond conditions; (6) the existence of any other outstanding bonds; and (7) aggravating circumstances alleged to have been involved in the charged offense. *Id*. (citing *Ex parte Rubac*, 611 S.W.2d at 849–50). In a habeas case, the writ applicant bears the burden of proving facts that would entitle him to relief and ensuring that a sufficient record is presented to show error requiring reversal. *See Ex parte Kimes*, 872 S.W.2d 700, 703–04 (Tex. Crim. App. 1993). The burden of proof is on the petitioner for bail reduction to show that the bail set is excessive. *Ex parte Rubac*, 611 S.W.2d at 849.

### III. ANALYSIS

Applying the article 17.15 factors with the evidence in this case, we note that the bond of $500,000 is sufficient to ensure Fuentes's compliance with court-ordered appearances. *See* TEX. CODE CRIM. PROC. ANN. art. 17.15(1). Although the bond is high and both Fuentes and his family testified that $50,000 (or ten percent of $500,000) would be an impossible financial threshold for them to reach, we note that the nature of the offense and the circumstances of Fuentes's alleged crimes are grave and serious. *See id*. art. 17.15(3)–(4). Kristal and her family were enjoying an evening on the town together when Fuentes entered the pub and shot Kristal and her mother point-blank with no warning. Kristal died. Ana grieved the loss of her child while fighting for her life in a hospital and enduring multiple life-saving surgeries.

Further, Ana testified that she was still afraid of Fuentes. *See id*. art. 17.15(5). She informed the trial court that Fuentes had a history of threatening her family in person, of lurking near her apartment and vehicle, that he sent phone text messages indicating "he

7

couldn't wait to see them," and that she believed Fuentes would "come and shoot" her again if released on bail. *Id.* Silva also testified that Fuentes had previously physically attacked his stepdaughter, wife, and granddaughter. *Id.*

We acknowledge that Fuentes had: (1) a ten-year intermittent work history in Corpus Christi working as a sandblaster/painter in a local refinery; (2) strong family ties, with sisters in the community and a mother who promised to shelter him; (3) lived in Corpus for the entirety of his life; and (4) a minor criminal record. *See Ex parte Cardenas*, 557 S.W.3d at 729. However, at the time of his arrest for the murder of Kristal and the aggravated assault with a deadly weapon on Ana, Fuentes also had an outstanding warrant for failing to appear at a hearing on a pending DWI charge.

In light of the facts before us, we cannot conclude that the trial court abused its discretion when it reduced Fuentes's pretrial bail from $750,000 to $500,000. *See Ex parte Cardenas*, 557 S.W.3d at 729. We thus overrule his sole issue.[3]

## IV. CONCLUSION

We affirm the trial court's judgment.

LETICIA HINOJOSA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
22nd day of July, 2021.

---

[3] Moreno filed a motion to accelerate the case on October 27, 2020, which we carried with the case on November 12, 2020. With the issuance of this opinion, we dismiss this motion as moot.